**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James P. SHOFFNER, Defendant–Appellant.**

**No. 94–2585.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1995.

Decided Dec. 21, 1995.

Monica Allen, St. Louis, MO, argued, for appellant.

Larry Howard Ferrell, Cape Girardeau, argued, for appellee.

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HANSEN, Circuit Judge.

James P. Shoffner appeals his conviction for conspiracy to distribute marijuana. Shoffner contends that the district court[1] erred at trial by admitting evidence of Shoffner's prior state court conviction for dealing in marijuana and by denying his motions for judgment of acquittal. Finding no error, we affirm.

## I. BACKGROUND.

In a superseding indictment, the government charged James P. Shoffner and eight others with conspiring to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 846, beginning in or around February 1993 and lasting through April 1993. During the 12–day trial, the government presented extensive evidence establishing the existence of a conspiracy, which may have originated as early as 1986, and its participants, 12 of whom were indicted in the Eastern District of Missouri. For purposes of this appeal, we recite only the evidence relevant to Shoffner's conviction.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

During the life of the conspiracy, its participants distributed over 25,000 pounds of marijuana, which had been smuggled into this country from Mexico and transported in loads to various warehouse locations throughout the United States. From the warehouses, the marijuana was distributed to wholesale marijuana dealers who would travel from throughout the country to these warehouse locations to purchase the marijuana. The conspiracy was detected by law enforcement officials on March 9, 1993, when various conspirators began to gather at Cape Girardeau, Missouri, to coordinate the distribution of marijuana from a warehouse in southern Illinois.

At trial, Lionel Garcia, a resident of Texas and member of the conspiracy, testified against Shoffner. Garcia testified that he made plans to arrange a purchase of 500 pounds of marijuana from the Illinois warehouse for Daniel Clark, an acquaintance and resident of Kentucky. Garcia arranged the transaction through Jose Trevino, a resident of Brownsville, Texas, who was involved in coordinating the distribution of marijuana from the warehouses. Garcia and Trevino arranged to meet on March 10, 1993, at the Victoria Inn, a hotel at Cape Girardeau, Missouri, which is across the Mississippi River from the Illinois warehouse.

Garcia met Clark and Joseph L. Hagen, Jr., at the Louisville, Kentucky, airport on March 10, 1993. The same day, they drove together in a van to Cape Girardeau. Clark informed Garcia that another group of "his people" would be coming in a van driven by Joseph Hagen, Sr., to help transport the marijuana back to Kentucky.

A few hours after the Garcia vanload arrived at Cape Girardeau, Joseph Hagen, Sr., and James Shoffner arrived in the second van and came to Garcia's hotel room. A conversation took place among all those in the room, including Shoffner, concerning the transportation of the marijuana. Garcia testified that he would never discuss the location or transportation of a drug transaction if anyone not a party to the transaction was present. Garcia testified that at this meeting Shoffner was asked to, and did, approve a sample of the marijuana to be purchased.

After the meeting, Garcia, Clark, the Hagens, Shoffner, and Michael Hartwick (the person who had produced the marijuana samples for approval) began the short trek to the Illinois warehouse to load the marijuana.

Meanwhile, local surveillance had begun earlier during the day on March 10, 1993. In the early morning hours of March 11, 1993, law enforcement officials stopped the three vehicles en route to the warehouse. Michael Hartwick was driving the lead vehicle, followed by a van driven by Clark and a pickup driven by Shoffner. The police detained them all and transported them to the police station for questioning. Shoffner was questioned and later released. Hartwick agreed to cooperate with authorities and disclosed the location of the Illinois warehouse, where over 1,000 pounds of marijuana was stored. Shoffner was arrested after further investigation.

From the beginning of the trial, Shoffner's defense was that his mere presence with the conspirators was not sufficient evidence to consider him a co-conspirator. To rebut this defense and to show motive, intent, plan, knowledge, and absence of mistake, the government offered evidence via a 1988 Indiana conviction that Shoffner had previously dealt in large amounts of marijuana. The district court admitted this evidence over Shoffner's objections.

At the close of the government's case and again at the close of trial, Shoffner moved for a judgment of acquittal. The district court denied the motion at each juncture. The case was submitted to the jury, which rendered a verdict of guilty against Shoffner. The district court sentenced Shoffner to 120 months of imprisonment to be followed by 8 years of supervised release. Shoffner appeals his conviction but does not challenge his sentence.

## II. DISCUSSION.

### A. Rule 404(b) Evidence.

Shoffner first contends that the district court erred by admitting the detailed testimony concerning the nature of his prior state court drug conviction to prove motive, intent, preparation, plan, knowledge, identity, or ab-

sence of mistake. *See* Fed.R.Evid. 404(b). At trial, the district court admitted not only the fact that Shoffner had a 1988 Indiana state court conviction for dealing in marijuana, but also admitted details of that conviction, including the following: Shoffner had been involved in a large-scale marijuana cultivation operation in 1987; upon its discovery, Indiana authorities executed a search warrant and found additional marijuana plants drying at the site; additionally, the authorities found three loaded weapons at the site, which were not charged against Shoffner.

■ Rule 404(b) provides that a district court may admit "[e]vidence of other crimes, wrongs or acts" for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;" but not for the purpose of proving the character of the defendant to show that he acted in conformity with that character. Fed.R.Evid. 404(b). *See also, United States v. Jones,* 990 F.2d 1047, 1050 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994). Rule 404(b) is a rule of inclusion, prohibiting only evidence that tends solely to prove the defendant's criminal disposition. *United States v. Yellow,* 18 F.3d 1438,.1441 (8th Cir.1994). To be admissible as Rule 404(b) evidence, the evidence must be "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *Jones,* 990 F.2d at 1050 (quotations omitted). A district court has "broad discretion" when deciding whether to admit evidence of other crimes or bad acts. *United States v. Mihm,* 13 F.3d 1200, 1204 (8th Cir.1994). We "reverse only when it is clear that the evidence has no bearing on the case." *United States v. Williams,* 895 F.2d 1202, 1205 (8th Cir. 1990).

■ Shoffner contends that the district court abused its discretion because the evidence was not similar in kind to the crime charged. We disagree. The Rule 404(b) "other crimes" evidence in this case is similar enough to be probative of Shoffner's intent. "When admitted for the purpose of showing

intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." *United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir. 1987). Although the details of the prior crime are not exact duplicates of this case, we believe that the evidence of Shoffner's prior involvement in large-scale marijuana dealing is sufficiently similar to the present charge of conspiracy to distribute over 1,000 kilograms of marijuana to support an inference of criminal intent. *See generally, United States v. Johnson,* 977 F.2d 457, 458 (8th Cir.1992) (evidence of prior possession with intent to deliver marijuana was sufficiently similar to crime of possession with intent to distribute cocaine); *United States v. Wint,* 974 F.2d 961, 967 (8th Cir.1992) (evidence of prior arrest for possession of a distributable amount of crack cocaine was sufficiently similar to conspiracy to distribute cocaine), *cert. denied,* 506 U.S. 1062, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993). Shoffner's prior involvement in marijuana dealing also tends to prove motive, knowledge, and absence of mistake to rebut Shoffner's claim that he was merely present and unaware of the conspiracy. *See United States v. Miller,* 974 F.2d 953, 960 (8th Cir.1992) (prior drug involvement may be relevant to prove motive to join a conspiracy); *Williams,* 895 F.2d at 1205 (evidence of prior drug dealing relevant to both knowledge and absence of mistake).

Shoffner also argues that because the conduct of his prior crime occurred six years earlier, it is not reasonably close in time to the crime charged, as required for the admission of Rule 404(b) evidence. Whether the evidence is close in time is one factor indicating the relevancy of the evidence, but "there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent." *Burkett,* 821 F.2d at 1309–10. The closer in time to the crime charged, the more likely the evidence is to be admissible; but we have approved the admission of other crimes evidence for acts committed up to 13 years before the crime charged. *See United States v. Engleman,* 648 F.2d 473, 479 (8th Cir.1981). To determine if evidence is too remote, "the court applies a reasonableness standard and examines the facts

and circumstances of each case." *Id.* In other drug cases, we have held that a lapse of time comparable to that present here was sufficiently close in time to render the other crimes or bad acts evidence admissible. *See, e.g., Wint,* 974 F.2d at 967 (five-year lapse is reasonably close in time); *United States v. Lyon,* 959 F.2d 701, 706 (8th Cir.1992) ("within a few years" is reasonably close in time). Given the similarity of the nature and extent of the prior crime to the crime charged in this case, we conclude that a lapse of six years is not so remote as to render the other crimes evidence inadmissible.

 Shoffner also argues that the prejudicial effect of the details of his prior crime, specifically that three loaded weapons were found, outweighed its probative value. We disagree. Most of the details admitted were necessary to establish that the other crime was very similar to the present charge: both involved a large-scale operation of obtaining and dealing in marijuana. In the other crime, the marijuana was obtained through cultivation, whereas here it was obtained through importation; but this difference is insignificant and does not indicate unfair prejudice. Given the similarities between the crimes, the evidence of the three weapons in the prior crime may not have been necessary. However, the evidence helped define the nature and extent of the prior crime, and moreover, it also clearly showed that Shoffner was not charged with any weapons violations. The fact that weapons were found at the prior marijuana operation is a difference in detail which, in the drug dealing context, is not "so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial." *Yellow,* 18 F.3d at 1442 (alteration in original) (quotation omitted). Furthermore, the district court was careful to give a limiting instruction both before the evidence was offered and at the close of trial, instructing the jury as to the proper use of this evidence.[2]

We conclude that the district court did not abuse its broad discretion by admitting the Rule 404(b) evidence in this case because the evidence was relevant to material issues at trial, it was similar and reasonably close in time to the crime charged, and its probative value was not outweighed by potential unfair prejudice.

**B. Sufficiency of the Evidence.**

Shoffner contends that the evidence was insufficient to establish that he entered into an agreement to distribute marijuana, and therefore, the evidence cannot sustain his conviction for conspiracy to distribute marijuana. When reviewing the sufficiency of the evidence to sustain a conviction, we view the evidence in the light most favorable to the guilty verdict, "accepting as established all reasonable inferences tending to support the verdict." *Lyon,* 959 F.2d at 705. We reverse only if we conclude that "no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Logan,* 49 F.3d 352, 360 (8th Cir.1995) (internal quotation omitted).

 To sustain a conviction for conspiracy to distribute marijuana, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute marijuana; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy. *United States v. Agofsky,* 20 F.3d 866, 870 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196 and —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). " 'The agreement need not be formal; a tacit understanding will suffice. Moreover, the government may prove the agreement wholly by circumstantial evidence or by inference from the actions of the parties.' " *Wint,* 974 F.2d at 968 (quoting *United States v. Sparks,* 949 F.2d 1023, 1027 (8th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992)). However, a defendant's mere presence, coupled with the knowledge that some-

2. Although we are not prepared to find that the district court abused its discretion in admitting the testimony about the weapons, we note that any error in admitting this evidence was harmless error at best. After reviewing all of the evidence, we have determined that the weapons testimony did not have a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Mihm,* 13 F.3d at 1205 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, ——, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993)).

one else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy. *See United States v. Rork,* 981 F.2d 314, 316 (8th Cir.1992).

■ Viewed in the light most favorable to the verdict, the evidence shows that a conspiracy to distribute marijuana clearly existed; this Shoffner does not dispute. The evidence also shows that Shoffner knowingly became part of the conspiracy. "Once the existence of a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *Agofsky,* 20 F.3d at 870 (internal quotations and citations omitted). Shoffner travelled from Kentucky to Missouri to help transport 250 of the 500 pounds of marijuana that Clark arranged to purchase (Clark needed a second vehicle to transport such a large amount of marijuana). Shoffner was present at the hotel meeting where the plan to transport the marijuana to Kentucky was discussed, Shoffner approved the quality of the sample marijuana offered to him, and Shoffner knowingly drove one of the vehicles in the caravan toward the marijuana warehouse in Illinois around 1:00 a.m. on March 11, 1993, to assist in transporting the 500 pounds of marijuana. Additionally, Shoffner's intent, motive, knowledge, and absence of mistake are established by his prior dealing in large quantities of marijuana. We cannot conclude that no reasonable jury could have found Shoffner guilty beyond a reasonable doubt of the crime of conspiracy to distribute marijuana. Accordingly, the district court did not err in denying Shoffner's motions for judgment of acquittal.

## III. CONCLUSION.

The district court did not err by admitting the Rule 404(b) evidence of the appellant's prior conviction, and the district court did not err by denying Shoffner's motions for judgment of acquittal. Accordingly, we affirm the judgment of the district court.